IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01160-PAB

CHRISTY R. GORRINGE,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Christy R. Gorringe's complaint [Docket No. 1], filed on May 2, 2011.  Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On September 10, 2008, plaintiff applied for disability benefits, alleging that she had been disabled since April 30, 2006.  After an initial administrative denial of plaintiff's application, an administrative law judge ("ALJ") held a hearing on January 28, 2010.  In

---

[1]The Joint Case Management Plan indicates that defendant does not request oral argument and that plaintiff requests it "only to clarify any outstanding issues, and at the Court's behest."  Docket No. 11 at 3, ¶ 9.  The Court concludes that it can resolve the issues presented in this matter without the need for oral argument.

a decision dated February 26, 2010, the ALJ denied plaintiff's claim.

The ALJ determined that plaintiff had the "following severe impairments:

cognitive disorder NOS secondary to a remote history (1996) of aneurysm and

craniotomy, major depression, and post traumatic stress disorder[.]"  R. at 12.  The ALJ

concluded that these impairments, alone or in combination, did not meet one of the

regulations' listed impairments, R. at 13, and ruled that plaintiff retained the residual

functional capacity ("RFC") to

> perform a full range of work at all exertional levels.  However, she has the
> following nonexertional mental limitations.  The claims is limited to semi-
> skilled work.  The claimant is capable of the basic mental demands of
> competitive, remunerative, unskilled and semi-skilled work.  On a sustained
> basis, the claimant can understand, remember, and carry out simple and
> semi-skilled instructions.  The claimant can respond appropriately to
> supervision, coworkers, usual work situations, and can deal with changes
> in a routine work setting.

R. at 14.  Based upon this RFC and in reliance on the testimony of a vocational expert

("VE"), the ALJ concluded that "claimant is capable of performing past relevant work as

a receptionist."  R. at 18.  Therefore, the ALJ determined that plaintiff was not disabled.

*See* R. at 18-19.

The Appeals Council denied plaintiff's request for review of this denial.  *See* R. at

1.  Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole.  *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990).  "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district

court will not "reweigh the evidence or retry the case," but must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met."  *Flaherty*, 515

F.3d at 1070*.*  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a

ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ failed to adequately weigh the various medical and non-medical opinions in the record, resulting at step four of the analysis in an RFC not supported by substantial evidence.  Furthermore, plaintiff contends that the ALJ inadequately explained his conclusion that her RFC was consistent with the requirements of her past relevant work as a receptionist.[2]

In concluding that plaintiff was not disabled, the ALJ gave the "[g]reatest weight" to the opinion of the state agency psychologist who reviewed plaintiff's medical records and completed a Mental Residual Functional Capacity Assessment form.  R. at 17.  The ALJ, however, failed to provide any explanation for giving this non-treating source opinion the "greatest weight" other than to state that it was "consistent with the record as a whole" and was "not inconsistent" with the opinion of Mack Green, Ed.D., who conducted a comprehensive neuropsychological evaluation of plaintiff.  R. at 17.  Furthermore, the ALJ, again without explanation, relied only upon one summary conclusion stated in the state agency examiner's opinion, namely, that plaintiff has the "mental ability to understand and carry out simple to semi-skilled tasks on a sustained basis."  R. at 17.  The ALJ, however, did not address the state agency examiner's

---

[2]The ALJ concluded at step four of the analysis that plaintiff could engage in her past relevant work as a receptionist.  Alternatively, the ALJ concluded at step five of the analysis that "there are unskilled and semi-skilled jobs that clearly exist is [sic] significant numbers in the economy."  R. at 18.  The Commissioner does not dispute plaintiff's argument that the step five conclusion was not supported by substantial evidence, but instead contends that any error at step five was harmless in light of the ALJ's determination at step four.  Consequently, the Court limits the following discussion to plaintiff's arguments relating to the ALJ's step four analysis.

conclusions that plaintiff would be moderately limited in her "ability to understand and remember detailed instructions", "to carry out detailed instructions," "to maintain attention and concentration for extended periods," and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. at 290-91. An ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). The Court cannot assess whether these unaddressed conclusions are consistent with the summary opinion that plaintiff can engage in "simple to semi-skilled tasks on a sustained basis," R. at 17, in light of the ALJ's failure to articulate why the state agency examiner's ultimate opinion was consistent with the examiner's conclusions regarding plaintiff's limitations. *See* 20 C.F.R. § 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").[3] It is far from obvious that the limitations and the examiner's conclusion

_____

[3]This section was in effect at the time of the ALJ's decision in February of 2010. The section has since been amended. *See* 20 C.F.R. § 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating

are consistent.

Citing its Program Operations Manual System ("POMS"), defendant contends

that, because of the limitations noted by the examiner appear in Section I of the form,

they are not meant to convey an opinion regarding plaintiff's mental RFC.  *See* Docket

No. 14 at 15.  Assuming that is true, the ALJ still failed to explain how the moderate

limitations, particularly that plaintiff would be moderately limited in her ability to maintain

concentration and pace for extended periods and complete a normal work schedule,

were consistent with the examiner's ultimate opinion, which POMS itself requires.  *See*

POMS DI 24510.065, Section III of SSA-4734-F4-SUP - Functional Capacity

Assessment, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510065; *see*

*also Baysinger v. Astrue,* No. 11-cv-00333-WYD, 2012 WL 1044746, at *6 (D. Colo.

March 28, 2012) ("[T]he state agency provider's failure to include the moderate

limitations in section III or at least to ensure that they are represented in some manner

in that section is . . . contrary to the POMS.  The POMS requires the state medical

consultant prepare in section III a narrative statement for each of the subsections in

Sections I and II.  In doing so, the consultant is required to address each of the four

mental categories (Understanding and Memory, Concentration and Persistence, Social

Interaction, and Adaptation) and provide a narrative discussion of the individual's

capacities and limitations as to same. . . .") (citations omitted).

In any event, the Commissioner's description of the form is inconsistent with how

it is described on its face.  Section I of the form is entitled "Summary Conclusions" and

---

sources, nontreating sources, and other nonexamining sources who do not work for
us.").

instructs those completing the form to "record[] summary conclusions derived from the evidence in file" and that "[e]ach mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis."  R. at 290.  Section III allows for, *inter alia*, "[d]etailed explanation of the degree of limitation for each category," R. at 290, and "elaborations" on the conclusions reached in Section I.  R. at 292.[4]  Moreover, the Commissioner's interpretation of the POMS is inconsistent with the law of the Tenth Circuit, which does not permit that it be left "unexplained why the ALJ adopted some of [a medical opinion's] restrictions but not others."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *see Baysinger*, 2012 WL 1044746, at *6 ("[A]s to the argument that the ALJ is not required to consider the impairments found in Section I per the POMS, I find that portion of the POMS is contrary to Tenth Circuit law at least in the situation where, as here, the findings in Section III of the form do not adequately take into account those impairments.") (citing *McLeran v. Astrue*, No. 09-cv-02924-LTB, 2010 WL 4318579, at *6 (D. Colo. Oct. 25, 2010)).

The ALJ's conclusion that the state agency examiner's opinion is not inconsistent with that of Dr. Green, an opinion the ALJ afforded "[g]reat weight,"  R. at 17, sheds no additional light on his basis for relying so heavily on the summary statement in the examiner's opinion.  Dr. Green appears to have shared the state agency examiner's

---

[4] *See Bartley v. Astrue*, 2008 WL 594468, at *5 (E.D. Ky. Feb. 29, 2008) ("The POMS, while it can be considered persuasive authority by courts, does not have the force of law.  In the present action, the interpretation insisted upon by the defendant is contradicted by the definitions contained on the Mental Residual Functional Capacity Form itself.") (citation omitted).

opinion that plaintiff would have difficulty maintaining concentration and pace, *see* R. at

382 ("If placed in settings that required fast-paced processing of information and active

decision making, she is apt to become easily overwhelmed.").  Dr. Green further found

that plaintiff would have difficulty processing detailed information.  *See id.* ("If

information is presented to her in too great of detail, she is apt to quickly feel

overwhelmed.").  Moreover, Dr. Green stated that plaintiff's ability to organize,

sequence, and recall information was impaired.  For instance, Dr. Green stated that

plaintiff "demonstrated marked difficulty when confronted with problems of a more

abstract nature" and "difficulty when confronted with problem solving tasks that required

visual sequencing and flexibility."  R. at 381.  Dr. Green further stated that plaintiff "may

display difficulty on auditory memory tasks that required her to more actively organize

material for recall" and that her "[a]ttention/concentration abilities are compromised and

are likely easily exacerbated by poor frustration tolerance."  R. at 382.  How such

limitations are consistent with the RFC is left largely unexplained.  The ALJ's decision

implies that plaintiff would not necessarily be able to deal with the "particular stress and

pressures the claimant experienced" in her past position as a receptionist, but that such

"stress and pressures" are "not reflective of the job of receptionist as normally

performed in the economy, according to the [Dictionary of Occupational Titles]."  R. at

18.  The ALJ, however, does not provide any explanation or citation in support of this

characterization of the position and the Court has not identified any aspect of the VE's

testimony that would support such a conclusion.  *See* R. at 63-66.  Rather, the VE's

testimony appears to contradict that aspect of the ALJ's opinion.  *See* R. at 66 (where

VE does not distinguish plaintiff's actual duties as a receptionist from the "generic

receptionist position" described in the DOT).

These failures to adequately explain and support the conclusion at step four require that this case be remanded for additional proceedings.  The Court, therefore, will not address the ALJ's assessment of other medical opinions in the record, because the ALJ's analysis on remand may impact how these other opinions in the record are viewed.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Daniell v. Astrue*, 384 F. App'x 798, 804 (10th Cir. 2010).  The Court, however, will add that the ALJ, when assessing the opinions of "other sources" on remand, is not free to reject them solely because of a failure to comply with the Federal Rules of Evidence, *see* R. at 17 ("All opinions and inferences in these exhibits that exceed the provisions of [Fed. R. Evid] 701 are rejected."), which do not apply in these administrative proceedings.  *See* 42 U.S.C. § 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); *see also Richardson v. Perales*, 402 U.S. 389, 400-01 (1971) ("[S]trict rules of evidence, applicable in the courtroom, are not to operate at social security hearings. . . .  [A]dministrative procedure, and these hearings, should be understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation. This is the obvious intent of Congress so long as the procedures are fundamentally fair.").

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled

is REVERSED and REMANDED for further proceedings consistent with this opinion.


DATED September 30, 2012.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge